# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | No. 4:19-cr-437-DPM |
| ) | |
| TOMMY COLLIER ) | |

## MOTION TO SUPPRESS PHYSICAL EVIDNCE BASED ON ILLEGAL EXTENSION OF TRAFFIC STOP IN VIOLATION OF FOURTH AMENDMENT AND MEMORANDUM IN SUPPORT

Defendant moves to suppress the traffic stop and subsequent search of his vehicle as an unreasonable warrantless search under the Fourth Amendment to the United States Constitution.

**I.   Facts at Bar**

On September 11, 2018, Trooper Travis May of the Arkansas State Police pulled over a gray Chevrolet Malibu being driven by the Defendant, Tommy Collier, near the 173-mile marker of eastbound Interstate 40 for allegedly swerving onto the shoulder in violation of Ark. Code Ann. § 27-51-302. *See Incident Report Number A-09/18-1103 by Trooper Travis May, attached as Exhibit A.*

The trooper's dash camera recording of the incident does not show Collier crossing any lines, although it does capture Collier drifting in favor of the right side of the lane that he is driving in. The trooper's footage then shows Trooper May approaching the vehicle and informing him of the reason for the stop. Trooper May

requests Mr. Collier's license, registration and insurance information, at which point Mr. Collier responds that it is a rental, providing Trooper May with the appropriate paperwork on it. Trooper May then spends the next three and a half minutes asking Mr. Collier about the purpose of his travel, and whether or not there is any contraband in the vehicle, to which Mr. Collier responds, "no." Trooper May then returns to his vehicle with Mr. Collier's license and information. Trooper May remains in his cruiser for around three minutes running Mr. Collier's background, and then returns to Mr. Collier's vehicle. Upon his return to Mr. Collier's vehicle, Trooper May lets Mr. Collier know that he is aware that they had already covered that there wasn't anything illegal in the vehicle but, notwithstanding, requests permission to search the vehicle, which Mr. Collier denies. At this point, more than ten (10) minutes into the traffic stop, Trooper May informs Mr. Collier that he is going to have him "hang tight" while he calls his partner to come to the location to have his dog run around the car.

Trooper Mark Blackerby subsequently arrives with his K9 and begins to conduct an air sniff of the vehicle, this occurring more than sixteen (16) minutes from the time that Trooper May initially pulled Mr. Collier over. According to Trooper May's report, shortly after beginning the air sniff, the K9 alerts to the presence of narcotics and the troopers inform Mr. Collier that they would be

conducting a search of the vehicle. The subsequent search of the vehicle yielded a large quantity of suspected cocaine.

## II.  Law Enforcement Lacked Probable Cause for the Initial Traffic Stop

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure under the Fourth Amendment. *See United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). A traffic stop is reasonable where police have probable cause to believe that a traffic violation has occurred, *Whren v. United States*, 517 U.S. 806, 810 (1996), and any traffic violation provides probable cause for a traffic stop. *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994).

In the present case, Trooper May alleged in his reports that Mr. Collier violated the laws of Arkansas by leaving the roadway and crossing onto the right shoulder of the road. Notwithstanding, the trooper's video footage does not clearly show Mr. Collier swerving onto the shoulder of the road. Given that the trooper's dash camera does not show Mr. Collier committing a traffic violation, Trooper May lacked probable cause to initiate a traffic stop of Mr. Collier in the first place. Further, Mr. Collier was not charged with any traffic violation at either the state or federal level. The traffic stop was thus an illegal violation of Mr. Collier's rights under the Fourth Amendment.

Under the Fruit of the Poisonous Tree Doctrine, the exclusionary rule bars admission of physical evidence and/or live witness testimony obtained directly or indirectly through the exploitation of police illegality. *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir. 1987) (*quoting Wong Sun v. United States*. 371 U.S. 471, 484-88 (1963)). The search and subsequent seizure of the alleged contraband from Mr. Collier's vehicle was inexorably tied to initial illegality, and therefore must be suppressed by this Court as fruit of the poisonous.

### III. Law Enforcement Extended the Traffic Stop Absent Reasonable Suspicion in Violation of the Fourth Amendment Pursuant to *Rodriguez*.

In *Rodriguez v. United States*, the Supreme Court of the United States held that:

> [A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation therefore 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation.'

135 S.Ct. 1609, 1612 (quoting *Illinois v. Caballes*, 543 U.S. 405 (2005)). Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the stop such as checking the driver's license, determining whether the driver has outstanding warrants, and inspecting the vehicle's registration and proof of insurance. *Rodriguez*, 135 S.Ct. at 1615 (citation omitted).

These checks are allowed because they serve the same objective as enforcement of the traffic code: to ensure that cars on the roads are driven safely and responsibly. *Id*. An officer may conduct unrelated inquiries during an otherwise lawful traffic stop; however, "he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. A K9 sniff does not serve the same objective, but rather the government's interest in detecting crime in general or drug trafficking in particular. *Id*. Absent reasonable suspicion, continued detention of a motorist beyond the time necessary to complete the mission of the initial traffic stop violates the Fourth Amendment's proscription on unreasonable searches and seizures. *Id*.

In the instant case, Trooper May illegally detained Mr. Collier by prolonging the initial traffic stop in order to conduct inquiries unrelated to the stop. Specifically, Trooper May held Mr. Collier for an extended period of ten (10) minutes beyond successfully checking his license and registration in order to allow Trooper Blackerby time to arrive with his K9 in order to conduct an air sniff of the vehicle after Mr. Collier denied his request for permission to search. It is clear that Trooper May utilized the seizure of Mr. Collier to go on a fishing expedition for drugs – Trooper May did not have any reasonably articulable suspicion to detain Mr. Collier further, after clearing his license. From the point of clearing Mr. Collier's license and rental information, the extension of the stop was to conduct inquiries unrelated

to the purpose of the initial stop. Specifically, Trooper May informed Mr. Collier that he was going to have him "hang tight" until his partner arrived with his K9 to conduct an air sniff, stating that, "if the dog alerts on the car we will have probable cause to search it." This is the exact type of unconstitutional encounter held unreasonable under the Fourth Amendment pursuant to *Rodriguez* (where a 7–8-minute extension of the traffic stop in order to bring in a K9 to conduct a sniff was held unreasonable under the Fourth Amendment by the Supreme Court of the United States).

According to Trooper May's reports disclosed by the Government, Trooper May detained Mr. Collier beyond the time needed for the traffic stop because he exhibited signs of nervousness such as trembling hands, and the vehicle appeared "lived in." *See Exhibit A*. However, nervousness alone is never a basis for reasonable suspicion. *See United States v. Jones*, 269 F.3d 919, 928-29. As the Eighth Circuit noted in *Jones*:

> When an officer can cite only one or two facts, including a generic claim of nervousness, as supporting his determination of reasonable suspicion, then we may conclude that his suspicion was not reasonable. . . for it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.

*Id.* (quotations omitted). That is precisely the situation here. Further, nothing about Mr. Collier's travel plans was out of the ordinary. Mr. Collier informed Trooper May that he was driving the rental that his cousin had for the week,

traveling from Greenville, Missouri to Jacksonville in search of an auto shop that dealt with the specific tires he was needing. Mr. Collier stated that he was unsuccessful with his attempt to find such a place in Little Rock, Arkansas. Mr. Collier let Trooper May known that he had been traveling for at least a day, which would also explain the "lived in" state of the vehicle.

Further, Trooper May did not even attempt to complete the tasks associated with his mission of issuing a citation or warning for the violation, and essentially abandoned that mission to conduct the unrelated inquiries (i.e., getting inside Mr. Collier's vehicle to search for potential narcotics). At no point did Trooper May issue a citation or warning – verbal or written – nor did he discuss anything related to the mission of issuing a ticket for the alleged violation indicating, again, that his true intent was to conduct a drug interdiction rather than inquiries related to the initial traffic stop.

## IV.   Conclusion

Absent reasonable suspicion, Troopers May and Blackerby illegally detained Mr. Collier for a period of over twenty (20) minutes in order to conduct inquiries unrelated to his initial traffic stop. Specifically, Trooper May detained Mr. Collier for an additional ten (10) minutes beyond clearing Mr. Collier's license in order for Trooper Blackerby to arrive with his K9 and conduct a sniff following Mr. Collier's denial of permission to search. During this prolonged time Trooper May did not

perform any functions associated with the mission of the initial traffic stop – which made this precisely the type of detention that *Rodriguez* held unconstitutional, as argued *supra*. Further, Mr. Collier maintains that Trooper May lacked any reasonable suspicion and/or probable cause for the initial traffic stop at its inception.

As a result of this illegal detention absent reasonable suspicion, all evidence seized – both during and subsequent to the traffic stop – must be suppressed by this Court as being fruit of the poisonous tree.

Respectfully submitted,

   William O. "Bill" James, Jr.
WILLIAM O. "BILL" JAMES, JR. (1994108)
Attorney for Defendant
**James Law Firm**
1001 La Harpe Blvd.
Little Rock, AR 72201
(501) 375-0900
Email: Bill@jamesfirm.com

# Incident Report Form
## Arkansas Uniform

**Incident Report Number:** 5.1.0 A-09/18-1103

### SUMMARY

| Field | Value |
|---|---|
| Incident Type | Felony Drug Arrest |
| Incident Date | 9/11/2018 |
| Incident Time | 08:51:00 |
| Call Location | I-40 EB 173mm |
| Call Date | 9/11/2018 |
| Call Time | 08:51:00 |
| Incident County | LONOKE |
| Incident Address | I-40 EB 173mm |
| Incident City | LONOKE |
| Incident State | AR |
| Incident Zip Code | 72086 |
| Number of Subjects | 1 |
| Number of Vehicles | 1 |

### SUBJECT 1

The Subject is **Suspect**

| Field | Value |
|---|---|
| Last Name | Collier |
| First Name | Tommy |
| MI | C |
| Suffix | N/A |
| Address | 3543 Sherwood Dr. |
| City | GREENVILLE |
| State | MS |
| Zip Code | 38703 |
| License Status | Valid license |
| DL Number | 802656992 |
| DL State | MS |
| DL Endorsements | None |
| DL Class | Regular Ope |
| DL Restrictions | Prosthetic aid |
| Telephone Number | N/A |
| DOB | 9/1/1980 |
| Race | AFRICAN AMERICAN |
| Sex | Male |
| Height | 0'0 |
| Weight | N/A |
| Hair Color | BLK - Black |
| Eye Color | BRO - Brown |
| Employer | N/A |
| Work Number | N/A |
| Work Address | N/A |
| Work City | N/A |
| Work State | N/A |
| Work Zip Code | N/A |
| Injury Transported | ☐ Yes ☒ No |
| Transported By | N/A |
| Hospital Name | N/A |
| Hospital City | N/A |
| Hospital State | N/A |
| Additional Information | N/A |

A-09/18-1103



DEFENDANT'S EXHIBIT A

| V E H I C L E 1 | Vehicle Status | | | | | |
|---|---|---|---|---|---|---|
| | Suspect | | | | | |
| | Year | Make | | | Model | |
| | 2018 | Chevrolet | | | MALIBU | |
| | Plate Year | Plate State | | | Plate Number | Vehicle Type |
| | 2019 | UT | | | F261JY | Passenger Car |
| | Vehicle Color | Vehicle Identification Number | | | Remarks | |
| | GRAY | 1G1ZD5ST9JF254507 | | | N/A | |
| | Vehicle Towed | Name of Towing Service | | | Address Vehicle Moved To | |
| | ☑ Yes | Rich Auto | | | 915 W 4th St | |
| | ☐ No | City Vehicle Removed To | | State | | Zip Vehicle Removed To |
| | | Lonoke | | AR | | 72086 |
| | Insurance | Insurance Carrier | | Carrier Address | | Insurance Policy Number |
| | ☐ Yes ☑ No | N/A | | N/A | | N/A |

| | |
|---|---|
| **N A R R A T I V E** | On Tuesday September 11, 2018, at approximately 08:51 am I conducted a traffic stop on a gray Chevrolet Malibu displaying Utah license plate F261JY near the 173 mile marker of eastbound Interstate 40. As I was patrolling interstate 40 I observed the gray Malibu drive onto the shoulder of the roadway violating Arkansas statute 27-51-302.<br><br>I made contact with the driver and sole occupant of the vehicle, told him who I was and the reason for the stop. The driver told me that he understood and had driven onto the shoulder because he was adjusting his seatbelt. I asked to see his driver's license and was presented with a Mississippi driver's license identifying him as Tommy C. Collier, black male, 9-1-1980, from Greenville, Ms. Upon making initial contact with Mr. Collier I saw that the car had a lived in look which is an indicator of hard travel. I also saw Mr. Collier's hands shaking uncontrollably when he handed me his identification. This raised my suspicion of criminal activity.<br><br>I asked Mr. Collier about his trip and he told me that he was in Little Rock, Ar. for approximately 1 day looking for truck tires. I asked him about the rental car and Mr. Collier gave me a rental agreement showing that the car was rented in Las Vegas, NV. on September 9th and was to be returned back to Las Vegas, NV. On September 16th. I asked Mr. Collier how he came into possession of the car and he told me a cousin brought it to him in Greenville, MS so that he could use it. This is very unreasonable and the travel itinerary is not consistent with the innocent motoring public.<br><br>Due to Mr. Collier's extreme level of nervousness and unreasonable travel plans I suspected criminal activity. I asked Mr. Collier for consent to search the car. Mr. Collier refused consent to search the car so I called Tfc. Mark Blackerby to run his narcotics detector K-9 on the car. Tfc. Blackerby arrived on scene and deployed K-9 Raptor. Tfc. Blackerby told me and Mr. Collier that K-9 Raptor had showed a positive alert on the car and that we would be conducting a probable cause search of the car.<br><br>During the probable cause search of the car I located a small amount of suspected marijuana intermingled with some clothes in the trunk of the car. I continued my search to the passenger compartment. I picked up a brown bag and tan bag that was on the back seat directly behind Mr. Collier and noticed that it was unreasonably heavy. I opened the bag and saw numerous electric taped and clear plastic wrapped bundles of suspected narcotics. Tfc. Blackerby and I arrested Mr. Collier and called a wrecker to tow the car to the Lonoke County Sherriff's office.<br><br>Once at the Lonoke County Sherriff's office I uncovered a total of 9 kilo size bundles in the black and tan bag. Mr. Collier also told us that there was another kilo sized bundle in the black sports bag in the front passenger floor board. I was also able to locate receipts in the car that proved Mr. Collier came into the possession of the car in Nevada not Mississippi. Mr. Collier also had an airline tag in his wheel chair showing that his wheelchair had been checked onto a plane on September 8, 2018 with a final destination of McCarran International Airport in Paradise, NV. A field test of two of the bundles showed a compressed white powder testing positive for Cocaine.<br><br>Mr. Collier was booked into the Lonoke County Sherriff's office and charged with the following:<br>5-64-440 trafficking a Controlled Substance (felony)<br>5-64-429 Possession of a Controlled substance (misd)<br><br>The car was towed by Rich Auto and will be returned to the rental company.<br><br>The 10 kilos of suspected cocaine showed had an approximate weight of 27 lbs. The suspected cocaine was given the property control number of P-18-261-HP-A. It will stored in the Post 7 evidence at the Lonoke County Sheriff's office and taken to the State Crime lab for testing. |

| | | | | | |
|---|---|---|---|---|---|
| **O F F I C E R** | Rank | Officer Last Name | | Officer First Name | Officer MI | Officer Suffix |
| | TFC | May | | Andrew | Travis | N/A |
| | Officer Signature<br><br>*Tfp. A. May #363* | | Officer Department<br>STATE POLICE TROOP A | | | |
| | | | Officer Badge Number<br>363 | | | |
| | Rank | Supervisor Last Name | | Supervisor First Name | Supervisor MI | Officer Suffix |
| | Sergeant | Johnson | | Alan | N/A | N/A |
| | Supervisor Signature | | Supervisor Department<br>STATE POLICE TROOP A | | | |
| | | | Supervisor Badge Number<br>98 | | | |